**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **17-06187-hb**
Adversary Proceeding Number: **18-80089-hb**

**ORDER**

The relief set forth on the following pages, for a total of 10 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**09/10/2019**



US Bankruptcy Judge
District of South Carolina

Entered: 09/10/2019

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Aaron Lamont Chambers, Sr.,<br><br><br>Debtor(s). | C/A No. 17-06187-HB<br><br>Adv. Pro. No. 18-80089-HB<br><br>Chapter 13<br><br>**ORDER** |
| Aaron Lamont Chambers,<br><br>Plaintiff(s),<br><br>v.<br><br>Auto Brokers,<br><br><br>Defendant(s). | |

**THIS MATTER** came before the Court for trial on the Complaint[1] filed by Debtor Aaron Lamont Chambers, Sr., whose vehicle was repossessed by Defendant Americar, Inc. d/b/a Auto Brokers ("Auto Brokers") in violation of 11 U.S.C. § 362. Chambers alleges he is entitled to a judgment for damages. John M. Foster represented Auto Brokers and F. Lee O'Steen appeared on behalf of Chambers. After careful consideration and an opportunity to observe the credibility of the witnesses, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52.[2]

## FINDINGS OF FACT

Chambers lives in Rock Hill, South Carolina, where he is a self-employed truck driver. Auto Brokers is an auto dealership also located in Rock Hill. Chambers filed a voluntary

---

[1] ECF No. 1, filed Nov. 19, 2018.
[2] Made applicable to this adversary proceeding pursuant to Fed. R. Bankr. P. 7052.

petition for Chapter 13 relief on December 11, 2017.[3] On the same day, written notice was given to Auto Brokers by Official Form 309I entitled "Notice of Chapter 13 Bankruptcy Case" that includes the following information:

> The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors, the debtors' property, and certain codebtors. For example, while the stay is in effect, creditors cannot sue, garnish wages, assert a deficiency, repossess property, or otherwise try to collect from debtors. Creditors cannot demand repayment from debtors by mail, phone or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees.

Auto Brokers does not dispute it had due notice of this bankruptcy case and that it had adequate notice of the automatic stay.

Chambers' schedule of assets lists a 2007 GMC Yukon Denali (VIN # 1GKFK66877J399258 (the "vehicle") encumbered by a lien in favor of Auto Brokers. Auto Brokers filed a proof of claim in this case on January 2, 2018 in the amount of $11,338.40.[4] Attachments indicate a debt secured by the vehicle, which is titled in the names of Chambers and his wife. The contract is signed by Chambers as "buyer" and his wife as a "co-buyer."

Chambers' initial bankruptcy attorney, Janne Osborne, died on or about October 5, 2018,[5] leaving Chambers without representation. At the time of Osborne's death Chambers' plan was not yet confirmed.[6] Chambers was subsequently notified that an attorney was assigned by the South Carolina Bar to handle the distribution of Ms. Osborne's open case files.

---

[3] Case No. 17-06187-hb.
[4] The claim was amended twice thereafter.
[5] ECF No. 36, Case No. 17-06187-hb.
[6] Osborne's death delayed the progress of the case, but eventually a plan was confirmed on February 11, 2019, which provides for payment of Auto Brokers' debt in full with 5.25% interest.

2

Employee April Enos was Auto Brokers' only witness at the trial. In November 2018 she contacted Safeco Insurance company to inquire about the insurance coverage on the vehicle and was provided information that the policy had been canceled. As a result, the owner of Auto Brokers, Gerald Kimbrell, III, hired Carolina Towing and Recovery to repossess Chambers' vehicle. Enos testified that to her knowledge, no party at Auto Brokers sought any legal advice prior to the repossession. She was present at Auto Brokers on the day of the repossession and was following the owner's instructions at all times. She was not present at the location where the repossession took place.

Chambers testified that on November 16, 2018, he was driving the vehicle when a roll back wrecker with two occupants pulled in front of him and blocked his way, forcing him to pull over. The wrecker driver approached Chambers, who was still sitting in his vehicle. He informed Chambers that the vehicle was being repossessed and to immediately surrender the keys. When Chambers asked why the vehicle was being repossessed, he was told to "take it up with Auto Brokers." Chambers informed the wrecker driver that he was currently in bankruptcy. Despite this, the wrecker driver forcibly reached over Chambers through the vehicle's window to remove the keys. Chambers then pulled his keys out of the ignition and the wrecker driver physically and forcefully removed the keys from Chambers' hands while Chambers was still in the vehicle.

Enos testified that at some point during this altercation the wrecker driver informed her by telephone that Chambers refused to peacefully turnover the vehicle, but the wrecker driver had possession of the vehicle. Enos told the wrecker driver it was his job to recover the vehicle and to do what he believed was appropriate given the situation.

While still inside the vehicle, Chambers called Auto Brokers and was informed by an employee that the repossession resulted from a canceled insurance policy. Chambers informed the employee that the vehicle was, and had always been, insured. The employee told Chambers the vehicle could be returned if he provided proof of insurance and paid $200.00.

Chambers refused to exit the vehicle. The wrecker driver loaded it on to the roll back wrecker *with Chambers inside* and informed him that he would drive off with Chambers in the vehicle if he did not get out. Chambers was forced to jump off the wrecker, which he estimates was a five-foot drop. Chambers had knee surgeries in 2003 and 2007 and this jump caused him pain. Chambers then rode with the wrecker driver and the other person in the wrecker to Auto Brokers to present the insurance information to Enos.

Chambers reminded the employee at Auto Brokers of his pending bankruptcy case and asked for his vehicle. The request fell on deaf ears. While at Auto Brokers, Chambers was able to speak with the owner of the company over the telephone. Chambers called the owner's attention to his bankruptcy case, but the owner refused to return the vehicle. Chambers testified that the owner spoke very harshly to him and, using explicit language, demanded he leave Auto Brokers and not return.

Chambers left Auto Brokers on foot and walked two miles in the cold to his wife's place of employment. Chambers' wife immediately took him to a doctor's office where he was given a shot to help relieve the inflammation in his knee that resulted from the incident.

Chambers consulted with attorney Lee O'Steen,[7] who demanded Auto Brokers return the vehicle. When it was not returned, this adversary proceeding was filed on November 19,

---

[7] O'Steen was officially substituted as attorney of record on November 20, 2018.

4

2018, along with a *Motion for Immediate Turnover of the Vehicle* and *Motion to Expedite the Hearing*. On November 20, 2018, the Court scheduled a hearing for November 27, 2018, and due notice was given to Auto Brokers. Immediately after that hearing, the Court ordered Auto Brokers to immediately return the vehicle to Chambers at his residence, and gave due notice. Chambers recovered the vehicle in early December.

In response to the lawsuit, Auto Brokers attempted to explain its actions by arguing that the vehicle is regularly driven by Chambers' wife and, therefore, does not constitute property of his bankruptcy estate.[8] Auto Brokers also asserts it believed the insurance had lapsed and Chambers did not present sufficient proof of insurance at the time of the repossession.

Chambers sustained pain and actual damages jumping from the wrecker and suffered the inconvenience of time without the vehicle. Chambers is a truck driver and cannot park his tractor trailer near his home. He uses the vehicle to commute to and from his tractor trailer for work and was unable to do so without the vehicle. Chambers' attorney, whose office is in Rock Hill, spent time consulting with Chambers, contacting Auto Brokers, drafting the complaint and motions, serving the pleadings described above, and appearing in court in Spartanburg, South Carolina for the hearing on November 27, 2018. Chambers and his attorney also appeared in Spartanburg for the trial on September 2, 2019, which lasted approximately one hour.

## APPLICABLE LAW

Section 541 of the Bankruptcy Code defines property of the estate. "The commencement of a case . . . creates an estate. Such estate is comprised of all the following

---

[8] Auto Brokers' position is stated in the parties Joint Statement of Dispute.

5

property . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 362 of the code provides that a bankruptcy petition operates as a stay of:

> (1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> . . . .
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;
>
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that such lien secures a claim that arose before the commencement of the case under this title;
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title . . .

11 U.S.C. § 362(a).

Section § 362(k) provides, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." A willful violation of the automatic stay occurs when a "creditor knows of the pending bankruptcy petition and intentionally attempts to continue collection procedures in spite of it." *Weatherford v. Timmark (In re Weatherford)*, 413 B.R. 273, 285 (Bankr. D.S.C. 2009) (citing *Budget Serv. Co. v. Better Homes of Va., Inc.*, 804 F.2d 289, 292-93 (4th Cir. 1986)). There is no requirement that the creditor be given written notice of the bankruptcy; actual notice of the bankruptcy is sufficient. *See Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 486 (4th Cir. 2015) (citations omitted). Courts award punitive damages under § 362(k) for intentional or

6

egregious conduct in order to deter similar future conduct. *See In re Lansaw*, 853 F.3d 657 (3d Cir. 2017) (affirming $40,000.00 punitive damages award for creditor's egregious conduct in evicting debtors from commercial property knowingly in violation of the automatic stay and noting that "one of the purposes behind punitive damages is to deter future misconduct") (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416, 123 S. Ct. 1513, 155 L. Ed.2d 585 (2003)); *Credit Nation Lending Servs., LLC v. Nettles*, 489 B.R. 239 (N.D. Ala. 2013) (affirming the bankruptcy court's order canceling the debt as punitive damages for creditor's knowing and willful violation of the automatic stay); *Warren v. Dill (In re Warren)*, 532 B.R. 655 (Bankr. D.S.C. 2015) (awarding $11,596.96 in damages, of which $2,000.00 was punitive damages for the creditor's conduct in repossessing and delaying the return of the debtor's vehicle); *In re Bolen*, 295 B.R. 803, 812 (Bankr. D.S.C. 2002) (finding punitive damages of $12,500.00 appropriate where creditor repossessed debtor's vehicle with notice of the automatic stay, then retained the truck for ten weeks); *Randle v. Saga Auto Sales, Inc. (In re Randle)*, C/A No. 17-51312, Adv. Pro. No. 18-6018, 2018 WL 4211158 (Bankr. M.D.N.C. Sept. 4, 2018) (finding punitive damages of $25,000.00 appropriate where creditor repossessed debtor's vehicle post-petition, refused to return it for over eight months, and disposed of the vehicle after the adversary proceeding was initiated); *Taylor v. Credit Cars of Lexington (In re Taylor)*, C/A No. 10-01560-DD, Adv. Pro. No. 10-80058-DD, 2010 WL 5437244 (Bankr. D.S.C. Aug. 5, 2010) (awarding $5,000.00 in punitive damages as a result of creditor's knowing and willful vehicle repossession in violation of § 362).

## CONCLUSION

There is no evidence that the vehicle in question falls outside the scope of property of the estate under § 541 or that Auto Brokers reasonably believed it might. The automatic stay

prohibited Auto Brokers' actions described above. There is no exception in § 362 for property that a creditor unilaterally decides to exclude from protection of the automatic stay or for a creditor that decides to repossess property because it believes (correctly or incorrectly) that the insurance has lapsed. A creditor must seek the Court's permission pursuant to § 362(d) before taking any action prohibited by § 362(a).

Auto Brokers' conduct was willful and intentional. Written notice was given to Auto Brokers of Chambers' bankruptcy and the Notice of Filing stated the restrictions of § 362. Auto Brokers had additional reminders of the bankruptcy when Chambers repeatedly mentioned his filing on the day of the repossession. Despite these warnings, Auto Brokers repossessed and refused to immediately return the vehicle. Auto Brokers appears to be in the business of financing vehicle loans and any such creditor must educate itself about the restrictions of the automatic stay and applicable law. The record contains no evidence that Auto Brokers educated its employees prior to this incident about restrictions found in federal law that are directly applicable to its business model.

Chambers was injured as a result of Auto Brokers' willful and unlawful actions. After careful consideration, the Court finds that a combination of Chambers' physical pain, time without a vehicle, the value of his time spent seeking the return of the vehicle (including time in court for this proceeding), and attorney's fees are worth at least $1,000.00, which will be awarded as actual damages.[9]

Further, Auto Brokers' conduct demonstrates contempt and disregard for this Court and the protections provided to a debtor by the Bankruptcy Code. The manner in which the vehicle was repossessed, and the disrespect and disregard shown to Chambers further

---

[9] Nothing in the Order shall preclude O'Steen from applying for additional compensation through the Chapter 13 plan for his fees and expenses in this case.

aggravate the stay violation. Auto Brokers' conduct was egregious. The vehicle was repossessed at the direction of a company in the business of making loans and collecting debts with full knowledge of the automatic stay, without Court permission, and without valid justification, and its actions were unprofessional and likely contrary to South Carolina law.[10] Auto Brokers presented no evidence to indicate any remorse or apology regarding its actions and offered no plan to evolve in the future. The conduct of Auto Brokers is squarely within the type § 362 is designed to prevent, and punitive damages in the amount of $10,000.00 are warranted to deter future similar conduct.

The Court determines that the most equitable means of aiding enforcement of this award is to credit the balance due on the Proof of Claim for the vehicle against the judgment amount imposed against Auto Brokers by this Order. Therefore, the Chapter 13 Trustee shall cease all payments to Auto Brokers and file a calculation of the unpaid balance due on Auto Brokers' claim on or before **September 20, 2019**. After that filing, the Court will enter a supplemental order as necessary to effectuate collection.

A separate judgment will be entered herewith and the terms and conditions of this Order shall survive any dismissal or conversion of this bankruptcy case.

**AND IT IS SO ORDERED.**

---

[10] *See* S.C. Code Ann. § 36-6-609 ("After default, a secured party . . . may take possession of the collateral . . . without judicial process if it proceeds without breach of the peace."); S.C. Code Ann. § 37-5-112 ("Upon default by a consumer with respect to a consumer credit transaction, unless the consumer voluntarily surrenders possession of the collateral or rented property to the creditor, the creditor may take possession of the collateral or rented property without judicial process only if possession can be taken without entry into a dwelling used as a current residence and *without the use of force or other breach of the peace*." (emphasis added)); *Jordan v. Citizens & S. Nat. Bank of S.C.*, 278 S.C 449, 451, 298 S.E.2d 213, 214 (1982) ("[A] breach of the peace is a violation of public order, a disturbance of public tranquility, by any act or conduct inciting to violence . . . It is not necessary that the peace be actually broken . . . [i]f what is done is unjustifiable, tending with sufficient directness to break the peace, no more is required." (quoting *Lyda v. Cooper*, 169 S.C. 451, 169 S.E. 236 (1993))).

9